# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LINDA C. SCOTT,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          1:16CV48
                                         )
NANCY A. BERRYHILL,                      )
Acting Commissioner of Social            )
Security,[1]                             )
                                         )
                    Defendant.           )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

        Plaintiff, Linda C. Scott, brought this action pursuant to the
Social Security Act (the "Act") to obtain judicial review of a
final decision of Defendant, the Acting Commissioner of Social
Security, denying Plaintiff's claims for Disability Insurance
Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket
Entry 1.)  Defendant has filed the certified administrative record
(Docket Entry 8 (cited herein as "Tr. __")), and both parties have
moved for judgment (Docket Entries 12, 17; see also Docket Entry 13
(Plaintiff's Brief); Docket Entry 18 (Defendant's Memorandum);
Docket Entry 19 (Plaintiff's Reply Brief)).  For the reasons that
follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January
23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy
A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this
suit.  No further action need be taken to continue this suit by reason of the
last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of January 30, 2009. (Tr. 266-73.) Upon denial of those applications initially (Tr. 125-64, 209-13) and on reconsideration (Tr. 165-208, 214-22), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 223-24). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing, during which Plaintiff amended her onset date to April 27, 2012, the day after an ALJ decision denying her prior claims for DIB and SSI. (See Tr. 40, 42, 285, 98-111.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-31.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-9, 362-63), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since April 27, 2012, the amended onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: multi-level degenerative disc disease without nerve root impingement; fibromyalgia; coronary artery disease; hypertension; bilateral carpal tunnel syndrome, status-post release surgery; sarcoidosis; chronic obstructive pulmonary disease/asthma; post-traumatic stress disorder; panic disorder; somatization disorder; depression; bipolar disorder; personality disorder;

2

cephalgia/migraine headaches secondary to cerebrospinal fluid leak; diabetes mellitus; gout; fatty liver; gastroesophageal reflux disease; sleep apnea; obesity.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with the following provisos: [Plaintiff] is limited to frequent use of the upper extremities bilaterally for pushing, pulling, operating hand controls, handling, fingering, and /or feeling. [Plaintiff] is limited to occasional use of her left lower extremity for pushing, pulling, and/or operating foot controls. [Plaintiff] must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, poor ventilation and the like, as well as concentrated exposure to temperature extremes of heat and humidity. [Plaintiff] must avoid even moderate exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. [Plaintiff] can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and/or crawl. [Plaintiff] can understand and perform simple, routine, repetitive tasks and maintain concentration, persistence and pace to stay on task for 2-hour periods over the course of a typical 8-hour workday in order to perform such tasks. [Plaintiff] requires a low stress work setting, which, in addition to the nature of the work being performed, is further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in the work setting. [Plaintiff] requires a sit/stand option that allows for the change of position at 30-minute intervals, in addition to normal work breaks.

. . .

3

6.   [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from April 27, 2012, through the date of this decision.

(Tr. 15-31 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561

4

(internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

_____

[2]  The Act "comprises two disability benefits programs.  [DIB] provides benefits to disabled persons who have contributed to the program while employed.  [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g.,
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ did not properly assess the opinions of two state agency psychological consultants that [Plaintiff] may have some limitations in maintaining concentration for two hours at a time" (Docket Entry 13 at 5 (bold font omitted)); and

---

[4] (...continued)
pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(2) "[t]he ALJ did not account for [Plaintiff's] moderate difficulties in concentration, persistence and pace [("CPP")] in his RFC assessment" (id. at 9 (bold font omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 18 at 5-17.)

### 1. State Agency Psychological Consultants' Opinions

In Plaintiff's first assignment of error, she contends that "[t]he ALJ did not properly assess the opinions of two state agency psychological consultants that [Plaintiff] may have some limitations in maintaining concentration for two hours at a time." (Docket Entry 13 at 5 (bold font omitted).) More specifically, Plaintiff maintains that the ALJ's "statement that the [consultants'] mental assessments were 'vague in some respects' is itself so vague as to frustrate meaningful review." (Id. at 7 (quoting Tr. 28).) Plaintiff points out "that the ALJ included in his RFC assessment limitations related to two of the three assessments he found 'vague in some respects'" (id. at 7-8 (quoting Tr. 28)), i.e., "the ALJ limited [Plaintiff] to only occasional contact with the public" in response to the consultants' opinion that Plaintiff "'may have some limitations responding appropriately to others'" (id. at 8 (citing Tr. 20, 21 and referencing Tr. 139, 158, 181, 202)), and "limited [Plaintiff] to low-stress work" due to the consultants' opinion that Plaintiff "may have some

9

limitations responding appropriately to workplace stressors" (id. (citing Tr. 20 and referencing Tr. 140, 159, 182, 203)). Plaintiff further argues that, "[b]y crediting [the consultants'] opinions with regard to workplace stressors and interaction with others, but discounting their opinions with regard to maintaining concentration, the ALJ's use of vagueness as a basis for giving these opinions partial weight lacks any explanatory power." (Id.) According to Plaintiff, the Court recently "faced a similar fact pattern" and remanded because the ALJ's "'failure to explain why [the plaintiff] [could] maintain focus throughout the workday [wa]s not a harmless error.'" (Id. at 8-9 (quoting Pulliam v. Colvin, No. 1:13CV176, 2106 WL 843307, at *5 (M.D.N.C. Mar. 1, 2016) (unpublished) (Osteen, Jr., C.J.)).) Plaintiff's arguments miss the mark.

As an initial matter, the Court should find Pulliam distinguishable from the instant case. In that case, the ALJ failed to weigh the opinion of a consultative examiner that the claimant would have "difficulty with tasks involving concentration and focus," Pulliam, 2016 WL 843307, at *4, but concluded in the RFC assessment that the claimant retained "the ability to maintain focus throughout the workday," id. The Court noted that, "[w]ithout an explanation from the ALJ to reconcile this apparent discrepancy, the undersigned is unable to determine if the ALJ intended to give little weight to [the consultative examiner's]

10

Case 1:16-cv-00048-CCE-LPA   Document 20   Filed 02/07/17   Page 10 of 23

opinion or if the ALJ inadvertently overlooked key aspects of it,"
and concluded that the ALJ's "failure to explain why [the claimant]
[could] maintain focus throughout the workday is not a harmless
error." Id.

In contrast, the ALJ here did expressly weigh the state agency
psychological consultants' opinions as follows:

> The mental assessments of the State agency psychological
> consultants determining [Plaintiff] capable of short,
> simple instructions with some limit[ed] ability to
> maintain concentration for 2 hours at a time, and
> respond[] appropriately to others and to workplace
> stressors due to mood, anxiety, and personality
> disorders[,] are given partial weight. However, the
> mental assessments are vague in some respects and the
> undersigned finds [Plaintiff] more limited in other
> respects based on the overall record evidence.

(Tr. 28 (emphasis added).) Although Plaintiff challenges the
sufficiency of the ALJ's above-quoted rationale for according the
opinions partial weight, the ALJ's express weighing of the opinions
in question distinguishes this case from Pulliam.

Similarly, Plaintiff's objection that the ALJ's description of
the state agency consultants' opinions as "vague in some respects"
(id.) qualifies itself as vague (see Docket Entry 13 at 7) lacks
merit. The state agency consultants' findings that Plaintiff "may"
experience "some" limitation in various work-related abilities (Tr.
139-40, 158-59, 181-82, 202-03) failed to provide concrete opinions
as to (1) whether Plaintiff actually experienced limitations in
those abilities; or (2) the degree of any such limitations. See
Isaacs v. Colvin, No. 1:12CV777, 2013 WL 6230352, at *5 (S.D. Ohio

Dec. 2, 2013) (unpublished) (holding ALJ did not err in discounting some of treating physician's opinions as "vague," where physician found that the claimant "may be able to stoop to some extent with some limitations, . . . [but] did not explain the limitations in stooping that Plaintiff 'may' have"), recommendation adopted sub nom Isaacs v. Commissioner of Soc. Sec., No. 1:12CV777, 2014 WL 1271030 (S.D. Ohio Mar. 27, 2014) (unpublished).

Further, Plaintiff proceeds from a faulty premise in arguing "that the ALJ included in his RFC assessment limitations related to two of the three assessments he found 'vague in some respects,'" but omitted a limitation relating to the ability to maintain concentration (Docket Entry 13 at 7-8 (quoting Tr. 28); see also id. at 13 (asserting that "the ALJ never provided an adequate explanation for why his own step three finding that [Plaintiff] had moderate limitations in [CPP] did not result in any limitation in concentration in the RFC" (emphasis added))). The ALJ's RFC explicitly limits Plaintiff's ability to maintain CPP and stay on task to two-hour periods of time. (See Tr. 20.) Plaintiff contends that such a finding amounts to no restriction because it effectively treats Plaintiff as if she "'could stay on task for an eight[-]hour workday'" (Docket Entry 13 at 11 (quoting Sizemore v. Colvin, No. 5:15CV53-MOC, 2016 WL 483140, at *3 (W.D.N.C. Feb. 5, 2016) (unpublished)), appeal pending, No. 16-1301 (4th Cir.), because "'customary [work] breaks . . . occur approximately every

two hours'" (id. (quoting Hawley v. Astrue, No. 1:09CV246, 2012 WL
1268475, at *7 (M.D.N.C. Apr. 16, 2012) (unpublished)),
recommendation adopted, 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012)
(Beaty, J.) (unpublished))). However, the ALJ did not find that
Plaintiff maintained the ability to stay on task for two-hour
periods to perform all manner of work; rather, the ALJ found that
Plaintiff could stay on task for two-hour blocks of time only when
performing "simple, routine, repetitive tasks . . . [in] a low
stress work setting, which, in addition to the nature of the work
being performed, is further defined to mean no production-pace or
quota-based work, rather a goal-oriented job primarily dealing with
things as opposed to people, with no more than occasional work with
the public as a component of the job, and no more than occasional
changes in the work setting." (Tr. 20-21.) Thus, the ALJ clearly
did include a limitation in the RFC to account for the state agency
psychological consultants' (vague) opinion regarding Plaintiff's
ability to maintain concentration.

Moreover, the ALJ's rationale, when considered in the context
of the ALJ's decision as a whole, does not frustrate this Court's
ability to engage in meaningful judicial review. Significantly, as
in another recent case, see Wall v. Colvin, No. 1:15CV1089, 2016 WL
5360682, at *6 (M.D.N.C. Sept. 23, 2016) (unpublished),
recommendation adopted, slip op. (M.D.N.C. Oct. 14, 2016) (Osteen,
Jr., C.J.), a comparison of the state agency psychological

13

consultants' assessments with the ALJ's mental RFC makes clear the manner in which ALJ accounted for those assessments. (Compare Tr. 20-21, with, Tr. 139-40, 158-59, 181-82, 202-03). Plaintiff, however, challenges any analogy to Wall on three separate bases. (See Docket Entry 19 at 3-5.)[6]

First, Plaintiff argues that "[h]ere, unlike *Wall*, the ALJ explicitly discussed his RFC assessment with respect to [Plaintiff's] mental impairments . . . [and] found that 'the reduction to the low stress, simple work detailed . . . in [the RFC] also accommodates [Plaintiff's] mental impairments.'" (Id. at 3 (quoting Tr. 26).) In that regard, Plaintiff asserts that "accommodating [Plaintiff's] mental impairments by limiting her to low stress, simple work did not account for [her] limitations in concentration" (id.), and "runs afoul of *Mascio*[ *v. Colvin*, 780 F.3d 632 (4th Cir. 2015)]," in which the United States Court of Appeals for the Fourth Circuit held that "'the ability to perform simple tasks differs from the ability to stay on task [and that] [o]nly the latter limitation would account for a claimant's

_____

[6] Arguably, Plaintiff presented a fourth reason for distinguishing Wall: "Moreover, the Court in *Wall* observed that the ALJ's decision in that matter did not involve a failure 'to explain an inconsistency, either between the state agency consultants' opinions or between those consultants' opinions and the ALJ's RFC regarding the plaintiff's ability to stay on task.' That is precisely the failure that occurred in this case. The ALJ here did not explain the inconsistency between his RFC finding and the opinions of the state agency consultants." (Docket Entry 9 at 4-5 (quoting Wall, 2016 WL 5360682, at *6); see also id. at 4 (arguing that, unlike Wall, the ALJ did not "properly weigh or discuss the opinion evidence in this matter . . . which was especially important since the opinion evidence conflicted with his RFC finding")).) However, the Court need not readdress this argument, as the Court should ultimately conclude, in conjunction with Plaintiff's first issue on review, that the ALJ properly analyzed the opinions of the state agency psychological consultants.

14

limitations in [CPP]'" (id. at 4 (quoting Mascio, 780 F.3d at 638)). However, for the reasons more fully explained below in conjunction with Plaintiff's second issue on review, the ALJ's restriction of Plaintiff to "a low stress work setting, which, in addition to the nature of the work being performed, is further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in the work setting" (Tr. 20-21 (emphasis added)), does reasonably account for Plaintiff's moderate deficit in CPP in compliance with Mascio.

Second, Plaintiff contends "that, unlike the ALJ in *Wall*, the ALJ here did not support his RFC finding by reference to [Plaintiff's] wide array of daily activities." (Docket Entry 19 at 4.) To the contrary, the ALJ noted that Plaintiff reported many daily activities (most of which require some ability to focus), including "working out, doing most of the grocery shopping and preparing meals and snacks throughout the day" (Tr. 26), "walking, crocheting and spending time with children and elderly people, . . . active[] involve[ment] in the faith community and . . . clean[ing]" (Tr. 27), "painting ceramics, [and] attending dance classes" (Tr. 28).

Third, Plaintiff notes that the state agency psychological consultants in Wall each "found that Plaintiff could '*maintain*

15

*concentration for 2 hours at a time* as required for the performance

of simple tasks'" (Docket Entry 19 at 4 (emphasis in original)

(quoting Wall, 2016 WL 5360682, at *6)), whereas the consultants

here each concluded that Plaintiff "may have some limitations"

maintaining concentration for two-hour periods (id. (referencing

Tr. 139, 158, 181, 202)).  However, that distinction does not

render the logic of the quoted language in Wall inapposite to the

instant case.  In Wall, both consultants found that the claimant

could maintain concentration for periods of two hours, and the

ALJ's RFC assessment (and decision as a whole) made clear that he

adopted that finding.  See Wall, 2016 WL 5360682, at *6.

Similarly, both consultants here opined that Plaintiff "may have

some limitations maintaining her concentration for two hours at a

time" (see Tr. 139, 158, 181, 202) and, again, the ALJ's RFC

assessment (see Tr. 20-21) (and decision as a whole) make clear how

the ALJ addressed that opinion and his rationale for doing so.

By considering the entirety of the ALJ's decision, the Court

can ascertain on judicial review how the ALJ dealt with the

consultants' opinions that Plaintiff "may have some limitations" in

maintaining concentration for two hours at a time.  (See Tr. 28,

139, 158, 181, 202.)[7]  At step three of the SEP, the ALJ gave

---

[7] Plaintiff contends that "[m]ost of the evidence to which [Defendant] refers [in
her memorandum] was not cited by the ALJ in his decision" (Docket Entry 19 at 2),
and that the "'so-called 'Chenery Doctrine' . . . prohibits courts from
considering post hoc rationalizations in defense of administrative agency
decisions.'" (Id. (quoting Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726,
(continued...)

Plaintiff the benefit of the doubt in finding that Plaintiff experienced a moderate deficit in CPP, despite the fact that Plaintiff's treatment providers frequently found her memory and attention adequate, and that she "was able to follow and respond appropriately to questions posed to her during the hearing." (Tr. 19.) As discussed above, the ALJ also cited Plaintiff's various daily activities, most of which require some ability to maintain focus, at several different points in his decision. (See Tr. 26, 27, 28.) The ALJ additionally noted that "[t]reating medical sources . . . observed [Plaintiff] being alert, cooperative and having a normal mood and affect and attention span and concentration in April and June 2014," and that Plaintiff "continued to describe multiple pro-social activities." (Tr. 28.) Further, the ALJ provided explanations for discounting the opinions and/or Global Assessment of Functioning ("GAF") scores[8] of Plaintiff's other mental health providers (see Tr. 27, 28), and Plaintiff does not challenge the ALJ's analyses of those opinions

---

[7] (...continued)
at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, Jr., J.) (italics in original omitted) (in turn citing Securities & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)).) However, this Recommendation does not rely on record evidence not cited by the ALJ in concluding that the ALJ's decision adequately explains how he accounted for the state agency psychological consultants' opinions regarding Plaintiff's ability to maintain concentration.

[8] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

17

and GAF scores (see Docket Entry 13 at 3-17; see also Docket Entry 19). Under these circumstances, the Court can meaningfully review the ALJ's manner of accounting for the state agency psychological consultants' opinions regarding Plaintiff's ability to maintain concentration.

In sum, Plaintiff's first claim on review entitles her to no relief.

## 2. CPP

In Plaintiff's second issue on review, she alleges that the ALJ "did not account for [Plaintiff's] moderate difficulties in [CPP] in his RFC assessment." (Docket Entry 13 at 9 (bold font omitted).) Plaintiff maintains that, pursuant to Mascio, "'the ability to perform simple tasks differs from the ability to stay on task[,] [and that] [o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Id. (quoting Mascio, 780 F.3d at 638 (internal quotation marks omitted)).) According to Plaintiff, the ALJ's RFC finding that Plaintiff "could maintain [CPP] to stay on task for 2-hour periods over the course of a typical 8-hour workday" (Tr. 20) conflicts with his step three finding of moderate deficit in CPP (see Tr. 19) and lacks adequate evidentiary support. (Docket Entry 13 at 9-10.) Once again, Plaintiff relies on Pulliam to support his arguments (id. at 10-11), claiming that the ALJ here, like the ALJ in Pulliam, "failed to provide an adequate explanation for the apparent discrepancy

18

between his step three finding and his RFC finding that [Plaintiff] could maintain concentration for 2-hour periods" (id. at 12). Plaintiff's arguments fall short.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, in this case, the ALJ expressly found in the RFC that, despite moderate limitation in CPP, Plaintiff retained the ability to "maintain [CPP] to stay on task for 2-hour periods over the course of a typical 8-hour workday in order to perform such tasks" (Tr. 20 (emphasis added)), provided that the simple tasks also qualified as "low stress work," not only as "to the nature of the work," but also "mean[ing] no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in work setting" (Tr. 20-21). The ALJ also included that same finding in his dispositive hypothetical question to the VE. (See Tr. 86-87.) Thus, the ALJ directly addressed Plaintiff's ability to stay on task in the RFC and hypothetical question, which distinguishes this case from Mascio. See Falls v. Colvin, No. 8:14CV195-RBH, 2015 WL 5797751, at *7 (D.S.C. Sept. 29, 2015) (unpublished) (distinguishing Mascio where ALJ accounted for moderate CPP

limitation by crafting restriction to performance of "simple, routine, repetitive tasks of one and two step instructions for . . . two hour periods," while "interact[ing] occasionally with the public" and working only "at a non-production pace," meaning "[n]o fast paced type work" and a "stable routine setting").

Moreover, the ALJ's foregoing restrictions in the RFC (and hypothetical question) "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," <u>Grant v. Colvin</u>, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in <u>Mascio</u> supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense. In <u>Mascio</u>, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," <u>see</u> 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, <u>Mascio</u> does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

Grant, 2016 WL 4007606, at *9; see also id. at *7-9 (discussing authority addressing "non-production" restrictions). Accordingly, the ALJ explicitly considered and reasonably accounted for Plaintiff's ability to "stay on task" in the RFC (and the dispositive hypothetical question), as required by Mascio.

Plaintiff would distinguish Grant (and a similar case, Bryan-Tharpe v. Colvin, No. 1:15CV272, 2016 WL 4079532 (M.D.N.C. July 29, 2016) (unpublished), objections filed, No. 1:15CV272 (M.D.N.C. Aug. 15, 2016)), from the instant case, because the ALJ in this case and in Pulliam "each also made an explicit finding that the claimant could either maintain focus throughout the day (Pulliam) or maintain concentration for two hours at a time ([this case])," but the ALJ made no such finding in Grant (or Bryan-Tharpe). (Docket Entry 13 at 14.) According to Plaintiff, "[i]f either [the] ALJ [in this case or in Pulliam] had intended a non-production restriction to address the claimant's moderate limitations in [CPP], the inclusion of an explicit limitation in focus or concentration would have been redundant." (Id.)

Plaintiff's argument defies logic, as well as the practices of ALJs in formulating RFCs. ALJs frequently make more than one finding in an RFC to address a single impairment or symptom, e.g., an ALJ will find that a claimant can perform light work (but not more strenuous exertional-level work) and impose a restriction to occasional postural movements because of a lower back impairment.

21

No reason exists to preclude an ALJ from (as here) formulating a multi-layered restriction which finds that a claimant can maintain CPP for two-hour periods (but not longer) provided the claimant also receives the benefit of a restriction to a non-production/non-quota-based work setting, all for the purpose of addressing a moderate limitation in CPP.  To hold otherwise would effectively (and illogically) punish an ALJ for prescribing a _more_ detailed accommodation of mental limitations in the RFC and hypothetical questions to the VE.

Finally, the Court should find <u>Pulliam</u> distinguishable on its facts.  In <u>Pulliam</u>, the Court could not meaningfully review the ALJ's conclusion that the claimant could maintain focus throughout the workday, because the ALJ failed to weigh the conflicting opinion of a consultative examiner, <u>see</u> <u>Pulliam</u>, 2016 WL 843307, at *4, <u>and</u> "grouped [the state agency consultants' opinions that differed on the claimant's ability to stay on task] together and adopted both without distinguishing between them," <u>see</u> <u>id.</u> at *6. Moreover, <u>Pulliam</u> did not expressly address the effect of the nonproduction/non-quota restriction, <u>see</u> <u>id.</u> at *5-7, and in fact noted that the question remained open by observing that "a number of post-Mascio cases stat[e] that a . . . limitation to simple, routine, repetitive tasks in a low production and/or socially isolated environment <u>may</u> be, without more, insufficient to account for moderate limitations in [CPP]" <u>id.</u> at *5 n.7 (emphasis added).

22

Under these circumstances, Plaintiff's second claim on review lacks merit.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

February 7, 2017